UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADIB K. TIMBUKTU and
CHAD PARHAM,

        Plaintiffs,

        v.                                    Case No. 05-C-0492

RONALD MALONE,
LT. SLATTERY,[1]
LT. WALKER,
LT. SALSBURY,
CORRECTIONAL OFFICER STALOWSKI
and CORRECTIONAL OFFICER KNUEPPEL,

        Defendants.

## DECISION AND ORDER

Plaintiffs, Adib K. Timbuktu and Chad Parham, filed this joint *pro se* civil rights action pursuant to 42 U.S.C. § 1983, and are proceeding *in forma pauperis* on various constitutional claims. This matter comes before the court on the defendants' motion for summary judgment.

## FACTUAL BACKGROUND

On May 2, 2005, the plaintiffs filed a civil rights complaint against defendants Ronald Malone, Lieutenant Slattery, Lieutenant Walker, Lieutenant Salsbury, Correctional Officer Stalowski and Correctional Officer Knueppel. The complaint was subsequently screened under 28 U.S.C. § 1915A(a) and the plaintiffs were

---

[1] It appears that the defendant's name is spelled "Slattery" and not "Slatterly." (*See* Affidavit of Scott Slattery). Therefore, the docket will be amended accordingly.

permitted to proceed on First, Eighth, and Fourteenth Amendment claims as well as a § 1983 conspiracy count. On September 22, 2006, the defendants filed a motion for summary judgment, which is fully briefed and ready for resolution.

**1.     Standard for Summary Judgment**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

2

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once this initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or on conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**2. Preliminary Matters**

Review of the defendants' motion reveals that it concerns only the plaintiffs' First and Fourteenth Amendment claims and does not address the remaining Eighth Amendment and conspiracy claims. Additionally, the motion advances no arguments on behalf of defendants Walker, Malone or Stalowski. Thus, the court construes the defendants' motion as one for partial summary judgment.

3

Also of concern is the plaintiffs' November 30, 2006, brief opposing the defendants' motion, which states: "We categorically deny all of the allegations and assertions made by the Defendants in support of their summary judgment motion. We attest and assert that all of these statements are false." The plaintiffs' response is deficient inasmuch as it fails to provide a specific response to each of the defendants' proposed findings of fact. *See* Civil Local Rule 56.2 (E.D. Wis.). Moreover, the plaintiffs' response does not comply with Federal Rule of Civil Procedure 56(e), which requires them to "set forth specific facts showing that there is a genuine issue for trial." Therefore, the court will disregard the plaintiffs' brief.

However, the plaintiffs' complaint is verified. Therefore, it will be considered as an affidavit for purposes of summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

## 3.     Relevant Undisputed Facts[2]

The plaintiffs were incarcerated at the Milwaukee County House of Correction (HOC) at all times relevant. (*See* Complaint [Compl.]). Defendants Bobbie Walker and Scott Slattery are employed as lieutenants at the HOC. (Affidavit of Bobbie Walker [Walker Aff.] ¶¶ 1, 2; Affidavit of Scott Slattery [Slattery Aff.] ¶¶ 1, 2). Defendant Nicole Knueppel is an HOC correctional officer. (Affidavit of Nicole Knueppel [Knueppel Aff.] ¶¶ 1, 2).

---

[2]The verified complaint, which starts on page three, is forty-four pages long. In the interest of simplicity, the court will refer to the complaint as it is numbered in the Electronic Case Filing (ECF) system, with the first page of the complaint being page number 1 and the last page of the complaint being page number 44.

4

**Events in 2000**

Plaintiff Timbuktu is a practicing Muslim. (Compl. 1). In 2000, he was engaged in salat (prayer) when defendant Slattery "ordered him to stop praying." *Id.* Plaintiff Timbuktu submits that defendant Slattery challenged whether nightly prayers were a valid requirement of the Islamic faith, and for the duration of his incarceration defendant Slattery "rarely failed to make negative, threatening remarks" to him. *Id.* at 2. Defendant Slattery's remarks were usually accompanied by a demand to stop praying. *Id.*

**Events in 2003**

In 2003, plaintiff Timbuktu returned to the HOC, whereupon defendant Slattery ordered him to pray "very quietly." *Id.* at 4. Defendant Slattery enlisted other officers to disrupt plaintiff Timbuktu's prayers. In addition, defendant Slattery ordered plaintiff Timbuktu to pray in areas of the dorm "that violated the Islamic criteria for appropriate places for salat." *Id.* Specifically, plaintiff Timbuktu was directed to pray beside his bunk, which was cramped and prevented him from facing east. *Id.*

**Events in 2004 and 2005**

During 2004 and 2005, defendant Walker was in charge of programs for HOC inmates, including the distribution of prayer towels to Muslim inmates. (Walker Aff. ¶ 3). Upon arrival at the HOC, inmates who identify themselves as Muslims sign their names on a sign-in sheet in order to receive prayer towels. (Walker Aff. ¶ 5).

5

In December 2004, plaintiffs Timbuktu and Parham began praying together at the HOC. *Id*. at 10. On the day of the Eid Ul-Adha celebration, the plaintiffs were praying in the showers when an unnamed correctional officer ordered them to pray in the "dayroom area near the C.O.'s desk per Lt. Slattery's orders." *Id*. at 13. Such close proximity made plaintiff Parham feel uncomfortable, and as a result he got into a fight and was transferred to disciplinary housing. *Id*. Plaintiff Timbuktu continued until January 24, 2005, to pray next to the desk. After that time, defendant Knueppel directed him to "pray beside his bunk." *Id*. at 15. Sometime later, defendant Knueppel prevented plaintiff Timbuktu from praying beside his bunk. *Id.* at 16-17. Plaintiff Timbuktu was then taken to the hole. *Id.* at 18.

Upon arrival in the disciplinary unit, plaintiff Timbuktu was directed to the southeast corner of the dorm wherein a section was marked off on the floor where he could pray unimpeded. *Id*. at 20. Plaintiff Timbuktu asserts that a mentally ill prisoner was soon assigned to the bunk directly adjacent to the prayer area, even though there were at least 25 open beds. *Id*. at 21. The other prisoner stayed awake all night long, shaking the bed as he got in and out countless times. *Id*. at 22. However, plaintiff Timbuktu used the prayer area for two days without incident. *Id*. at 22.

6

The night before plaintiff Timbuktu was to be released, defendant Slattery instructed another correctional officer to order Timbuktu to pray by his bunk. *Id.* at 22-23. Plaintiff Timbuktu avoided praying that day because he sensed that he was being set up for a confrontation with the mentally ill prisoner. *Id.* at 23.

When plaintiff Timbuktu was returned to general population, he and plaintiff Parham prayed together in the shower area and in the corner of the dorm. *Id.* at 24-25. At one point, plaintiff Timbuktu asked whether they could pray in the corner of the dayroom. *Id.* at 25. Manager Ross, who is not a named defendant, overhead plaintiff Timbuktu's request and responded: "Muslims are allowed to pray anywhere in this area that they choose. This direction is east," he said, pointing. *Id.* "I have it in writing that they are allowed to pray anywhere in the dorm area that they choose." *Id.*

The next day, however, defendant Stalowski told the plaintiffs that they could only "pray by their bunks but not in the isle (sic)." *Id.* at 26. The plaintiffs urged defendant Stalowski to call Manager Ross to clarify the prayer policy, but he refused. *Id.* Defendant Malone, who replaced defendant Stalowski on the next shift, told plaintiffs Timbuktu and Parham that "no prayer was allowed in the dorm area except by the bed." *Id.* at 27.

### DISCUSSION

The defendants assert that they are entitled to summary judgment with respect to the plaintiffs' First Amendment free exercise claim because their actions

7

are reasonably related to a legitimate state interest. Similarly, the defendants contend that the plaintiffs' Fourteenth Amendment equal protection claims should be dismissed because the challenged HOC policy is reasonably related to a legitimate state interest. The court will address the plaintiffs' claims in turn.

**A.     First Amendment Claims**

A prison regulation that infringes on inmates' constitutional rights is valid "only if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). However, this does not mean that a prisoner's "rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Rather, a prison "need make only reasonable efforts to afford the inmates an opportunity to practice their faith." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). "[L]imitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives - including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

To determine whether a rule is reasonable in light of penological objectives, courts should consider:

a. "whether a valid, rational connection exists between the regulation and a legitimate government interest in the rule;"

b. "whether there are alternative means of exercising the right in question that remain available to prisoners;"

c. "the impact accommodation of the asserted constitutional right

8

would have on guards and other inmates and on the allocation of prison resources;" and

    d.    "although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."

*Al-Alamin,* 926 F.2d at 685 (quoting *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir. 1988))(additional quotation marks omitted).

### 1. **Defendant Slattery**

Plaintiff Timbuktu alleges that his First Amendment rights were violated when defendant Slattery: (1) ordered him to stop praying; (2) ordered him to pray very quietly; (3) enlisted other prison officials to interrupt his prayers; and (4) ordered him to pray where he could not face east.

It is undisputed that in 2000, defendant Slattery ordered plaintiff Timbuktu to stop praying. Defendant Slattery also challenged whether nightly prayers were a valid requirement of the Islamic faith, made threatening remarks to plaintiff Timbuktu and demanded that plaintiff Timbuktu stop praying.

It is further undisputed that in 2003, defendant Slattery ordered plaintiff Timbuktu to pray "very quietly." Furthermore, defendant Slattery enlisted other officers to disrupt plaintiff Timbuktu's prayers and ordered him to pray in areas of the dorm that were cramped and prevented him from facing east.

In response to the plaintiffs' allegations, defendant Slattery submits that he prevented inmates from observing their religious customs only if they interfered with

9

the safety and security of the HOC. A security interest is a legitimate penological concern, *Al-Alamin*, 926 F.2d at 686, and courts afford great deference to prison administrators' expertise when they proffer such justifications for prison regulations, *Koutnik v. Brown*, 456 F.3d 777, 785 (7th Cir. 2006)(citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). However, a regulation cannot stand if "the logical connection between the regulation and asserted goal is so remote as to render the policy arbitrary and irrational." *Turner*, 482 U.S. at 89-90; *see also Jones v. Brown*, 461 F.3d 353, 360 (3d. Cir. 2006); *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005)("[I]f a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors [of the Turner test]."). Therefore, prison officials must articulate the relationship between their practices and the asserted legitimate penological objective such as internal security. *Thornburgh v. Thornburgh v. Abbott*, 490 U.S. 410, 414 n. 12 (1989).

In the present case, defendant Slattery does not sufficiently explain the relationship between his practice of restricting plaintiff Timbuktu from praying and the HOC's interest in security. Rather, defendant Slattery makes a blanket assertion that he never prevented any inmate "from praying per religious custom as long as it did not interfere with safety and security . . ." (Slattery Aff. ¶ 3). The "reasonableness standard is not toothless," *Thornburgh*, 490 U.S. at 411, and without first assessing whether defendant Slattery's response bore a reasonable relationship to a legitimate penological goal, the court cannot determine that plaintiff

10

Timbuktu's First Amendment rights were not violated. Therefore, the defendants' motion for summary judgment is denied as to the claims against defendant Slattery.

**2.    Defendant Knueppel**

Plaintiff Timbuktu alleges that his First Amendment rights were violated when defendant Knueppel: (1) ordered him to pray beside his bunk; and (2) later said that he could not pray by the bunk and sent him to the hole. In response, defendant Knueppel contends that she ordered plaintiff Timbuktu to stop praying because he was saying his prayers loudly between 4:30 and 5:00 in the morning and because he was disturbing the other sleeping inmates. Defendant Knueppel also contends that plaintiff Timbuktu refused to cease praying and, therefore, was taken to the hole.

Defendant Knueppel contends that she "never prevented Mr. Timbuktu or any other inmate from praying near their bunk, unless it interfered with the safety and security of the [HOC]." (Knueppel Aff. ¶ 3). As discussed, the safety and security of prisoners and prison officials is a legitimate state interest. *Al-Alamin*, 926 F.2d at 686. Prison officials can show how security concerns are implicated by submitting an affidavit of a person responsible for making discretionary decisions related to security matters indicating that the regulated conduct "constitute[s] a threat of potential violence or [is] disruptive of institutional security." *Caldwell v. Miller*, 790 F.2d 589, 599 (7th Cir. 1986).

In the present case, defendant Knueppel, like defendant Slattery, has not adequately articulated the relationship between her actions and the HOC's interest

11

in internal security. *See Thornburgh,* 490 U.S. at 414 n. 12. Specifically, defendant Knueppel has failed to show that plaintiff Timbuktu's praying was so disruptive that it implicated a security concern at the HOC. *See Caldwell*, 790 F.2d at 599. Moreover, defendant Knueppel has not responded to plaintiff Timbuktu's claim that she ordered him to pray beside his bunk. For these reasons, the defendants' motion for summary judgment is denied with respect to the claims against defendant Knueppel.

### 3. Defendant Walker

The plaintiffs assert that their First Amendment rights were violated when defendant Walker prevented them from participating in Ramadan. Specifically, the plaintiffs claim that defendant Walker prevented prisoners who had not been issued green prayer towels, and who had not been seen performing the daily Muslim prayers, from participating in the Ramadan feast. On the other hand, defendant Walker contends that she never refused any Muslim inmate the right to participate in the Ramadan feast.

At summary judgment, the court must resist "the temptation to decide which party's version of the facts is most likely true." *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). And, while summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp.,* 477 U.S. at 323-24, it cannot be used to resolve a swearing contest between litigants." *Payne,* 337 F.3d at 771.

12

In the present action, the plaintiffs and defendant Walker have submitted affidavits that differ as to whether the plaintiffs were permitted to participate in Ramadan. It is not appropriate to grant summary judgment where, as in the instant case, the plaintiffs have submitted evidence demonstrating a genuine issue of material fact. *Id.* Accordingly, the defendants' motion for summary judgment must be denied as to the claims against defendant Walker.

**B.     Equal Protection Claim**

The plaintiffs allege that their Fourteenth Amendment equal protection rights were violated when the defendants: (1) allowed Christian inmates to pray in groups of fifteen to twenty people while Muslims could only pray in groups of two; and (2) permitted Christian inmates to shout their prayers and stay up past bunk count, while the plaintiffs were required to go to sleep.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)).  To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

13

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safely*, 482 U.S. 78, 84 (1987). And, in the prison context, the equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions. *Al-Alamin*, 926 F.2d at 686.

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Id.* Prison officials confronted with an equal protection claim are required to "demonstrate a rational basis for their distinctions between religious groups." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 134 (1977); *see also Kikimura v. Turner*, 28 F.3d 592, 600 (7th Cir. 1994).

According to the defendants, it is the policy of the HOC that inmates may not gather in groups larger than two out of concern for the safety and security of other inmates and HOC staff. (Knueppel Aff. ¶ 6; Slattery Aff. ¶ 4). Specifically, the defendants state that it is difficult for HOC staff to observe inmates in large groups, thereby permitting inmates to plan gang activity, hide contraband or plan to harm another inmate.

14

The defendants' argument is misplaced. In the present case, the plaintiffs do not challenge the constitutionality of the HOC regulation. Rather, they assert that the defendants violated their equal protection rights by enforcing this policy against Muslim inmates and not against Christian inmates. Moreover, the plaintiffs allege that the defendants discriminated against them by allowing Christian inmates to stay up and pray past count, while the Muslim inmates were required to go to bed.

Discriminatory enforcement of a prison regulation on the basis of an inmate's religion may violate the equal protection clause. *Homer v. Reed*, 842 F.2d 960, 964 (7th Cir. 1988). The defendants have submitted no evidence refuting the plaintiffs' contention that the HOC policies are enforced in a discriminatory fashion. *Id.* Nor have they offered a rational basis for the differences in treatment between Muslim and Christian inmates. *Jones*, 433 U.S. at 134. Therefore, summary judgment will be denied as to this claim.

Accordingly,

**IT IS ORDERED** that the defendants' motion for partial summary (Docket # 22) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin this   27th   day of August, 2007.

BY THE COURT:

  s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge