# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ADIB K. TIMBUKTU and CHAD BERNARD PARHAM,

    Plaintiffs,

  v.                Case No. 05-C-0492

RONALD MALONE, LT SLATTERY,
LT WALKER, LT SALSBURY,
CORRECTIONAL OFFICER STALOWSKI, and
CORRECTIONAL OFFICER KNUEPPEL,

    Defendants.

---

## DECISION AND ORDER

Plaintiffs, Adib K. Timbuktu and Chad Parham, filed this joint *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiffs are proceeding on various constitutional claims. Now before the court is the plaintiffs' motion for partial summary judgment regarding their equal protection claim.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986) (emphasis in original). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

## BACKGROUND

The plaintiffs in this case are both practicing Muslims who were incarcerated at the Milwaukee County House of Correction (HOC). Their complaint is sworn, and it sets forth the basis of their equal protection claim. The plaintiffs aver that Christian inmates at HOC are allowed to pray in groups of fifteen to twenty people, while defendant Slattery has "issued a directive . . . wherein he stated that 'Muslims can pray in groups of two.'" (Compl. at 27-28). Further, the plaintiffs allege that Christian

2

inmates are permitted to shout their prayers and stay up past bunk count; Timbuktu

and Parham aver that "these nightly sessions are so loud that they wake up other

sleeping prisoners who are offended because they are forced into a church meeting

that they do not want to be a part of." (Compl. at 28).

The plaintiffs also submitted proposed findings of fact, but they were unsworn

and contained no references to evidence in the record. Civil L.R. 56.2(a) provides

that a motion for summary judgment must contain either a stipulation of facts

between the parties or a party's proposed findings of fact. It further requires that a

party's proposed findings of fact be "supported by specific citations to evidentiary

materials in the record (e.g., pleadings, affidavits, depositions, interrogatory

answers, or admissions)." *Id.*

However, the plaintiffs submitted a number of affidavits from current and

former HOC inmates in support of their motion. Derek K. Williams avers that

Christians are allowed to pray in the dayroom area of W6 dorm on a regular basis.

He also affirms that on Sunday, April 6, 2008, at least ten Christians conducted

prayer in the W6 dorm in plain view of the duty correctional officer, who did not

object in any manner.

Similarly, Sylvester Brougton affirms that on April 13, 2008, he was praying

in the dayroom area of his dorm at the HOC with five other Christian prisoners at

10:45 p.m. The correctional officer assigned to dorm briefly interrupted the prayer

and requested that the members of the group keep their voices down to a low level.

3

After the group agreed to do that, the correctional officer continued on about his business and did not bother the group any further.

Muhammad Beyah avers that in November 2007 he observed a large group of Christian prisoners conduct prayer in the southwest corner of the H2 dorm at the HOC. The prayer concluded with the participants all chanting the Lord's Prayer in a very loud manner so that everyone in the dorm could hear it. Beyah represents that the correctional officer on duty did not object in any manner or interfere with this group prayer.

Marvin Thomas avers that in 2005 he was housed in the same dorm at the HOC as Timbuktu. During that time, Marvin Thomas observed a large group of Christians conduct a nightly prayer wherein they chanted "Big prayer, big power! Little prayer, little power!" This prayer was conducted in the dayroom area and sometimes lasted past the 11:00 p.m. bedtime. Marvin Thomas observed this nightly prayer on many occasions, and it was never interrupted or obstructed by HOC staff. Marvin Thomas also saw the dorm correctional officer stop Timbuktu in the midst of his Muslin prayer in the dayroom area and order him to pray beside his bunk. After Timbuktu went to his bunk and began to pray on his knees, Marvin Thomas observed the prisoner in the next bunk pass gas into Timbuktu's face. The prisoners watching then erupted in loud exclamations because it was a very bad and unjust situation. Marvin Thomas then observed Timbuktu and the correctional officer arguing before Timbuktu was taken to segregation.

4

In his affidavit, Calvin Thomas stated that he was a prisoner at the HOC from August 2006 through March 2007. He was assigned to dorm J2 and witnessed large groups of Christians praying in the dayroom area. Calvin Thomas also observed inmate Roland Price leading large groups in prayer in the dayroom and dorm areas of dorm H2 with full cooperation from the staff. On just one occasion, Calvin Thomas saw staff restrict the Christian prayer group to four prisoners.

Hilton Myers was a prisoner at the HOC in November 2007. During that time, he occasionally participated in Christian prayer with ten or more other prisoners in the southwest corner of dorm H2. Myers affirmed that the prisoners were not obstructed, hindered or harassed by jail officials or other prisoners during prayer.

Tyrone Pickens was also a prisoner at the HOC during November 2007 and submitted an affidavit in this case. Pickens avers that he was awakened by a loud telephone conversation on November 15, 2007, in which the relief correctional officer on duty was seeking permission to get Timbuktu sent to the cell block. At that time, Timbuktu was prostrate in prayer in the southeast corner of the dorm. While Timbuktu was praying, Sergeant Raush, Lt. Speils and another lieutenant arrived at the dorm and spoke with the relief correctional officer. Pickens heard Lt. Speils tell the correctional officer very firmly that "Muslims have the right to pray." After Timbuktu finished praying, he was taken into the hallway by Lt. Speils, the sergeant and the correctional officer. Shortly thereafter, Timbuktu came back into the dorm and went to bed. He was not taken to the cell block.

5

The defendants did not respond to the plaintiffs' proposed findings of fact or even explain why they chose not to respond. The defendants also did not submit proposed findings of fact of their own. They simply attached three affidavits to their brief in opposition. The defendants' affidavits indicate that the HOC has a policy that inmates may not gather in groups larger than two for safety reasons. Further, in their affidavits, defendants Walker, Knueppel and Slattery each aver that they have never prevented any inmate, including, but not limited to, the plaintiffs, from praying per religious custom as long as it did not interfere with the safety and security of the HOC.

## EQUAL PROTECTION

The plaintiffs assert that they were denied the right to pray in dignity while Christian prisoners were allowed to pray in dignity without any interference and even with the cooperation of the HOC administration. The plaintiffs argue that Christian prisoners at the HOC were and are allowed to pray in groups larger than two within the dorms, while Muslim prisoners are not. They also suggest that the groups of Christian prisoners were allowed to pray loudly late at night, but the plaintiffs were prevented from praying early in the morning.

To prevail on an equal protection claim, an inmate must prove: (1) that similarly situated inmates have been treated differently by the government; and (2) that there is no rational relation between the dissimilar treatment and any legitimate penal interest. *United States v. Jester*, 139 F.3d 1168, 1771 (7th Cir. 1998) (inmate asserting equal protection claim must show that no facts may reasonably be

conceived to justify disputed classification); *see also* 34 Geo. L.J. Ann. Rev. Crim. Proc. 951 (2005).

In their brief and affidavits, the defendants do not even address the essence of the plaintiffs' equal protection claim, let alone refute it. The plaintiffs do not challenge the existence or validity of the HOC policy limiting gatherings of inmates (for any reason, not just prayer) to no more than two. Rather, the plaintiffs suggest that the policy was enforced as to Muslim inmates, but not as to inmates of other religions. The defendants did not acknowledge or address the admissible evidence the plaintiffs presented regarding gatherings of more than two Christian inmates for prayer, or regarding the times or noise level of those gatherings. Inexplicably, the defendants' brief addresses claims that are not relevant to the instant motion for summary judgment. Moreover, the defendants did not respond to the plaintiffs' proposed findings of fact, explain why they did not respond, or present proposed findings of fact of their own. Given that the defendants did not respond to this partial motion for summary judgment until they were ordered to, long after their time for doing so expired (even taking into account the brief stay of this case), the court expected a more complete response.

Despite the inadequacies of the defendants' response, the plaintiffs have not developed their equal protection claim fully enough for the court to grant summary judgment in their favor. Where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party. *See*

7

*Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F.Supp. 1130, 1149 (E.D. Wis. 1995).

To grant the plaintiffs' motion for partial summary judgment would be to do the plaintiffs' work for them. Even considering the liberal construction given to the pleadings of *pro se* litigants, "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008). The evidence the plaintiffs submitted suggests that their equal protection claim has a good chance of success. *See Gary v. Sheahan*, 1998 WL 547116 *9-10 (N.D. Ill.) (The defendant's enforcement of a facially neutral policy requiring that all inmates returning from court be strip searched violated female inmates' equal protection rights because females were routinely subjected to strip searches, while men were not). However, the plaintiffs' failure to pull together the facts and legal arguments precludes the court from granting summary judgment in favor of the plaintiffs. It is not for a court to comb through the record or to make an argument that the briefs do not make or to find record support for an argument that is made but not developed. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs" or in the record).

The next step for the plaintiffs' equal protection claim is trial. Once the court has decided the plaintiffs' other pending motion for partial summary judgment, the issues of scheduling and appointment of counsel for trial purposes will be addressed.

8

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for partial summary judgment

(Docket #51) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge